UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| - v - | No. 13-cr-135 (RJS) |
| CHRISTOPHER RAMIREZ, | |
| *Defendant.* | |
| CHRISTOPHER RAMIREZ, | |
| *Petitioner*, | |
| -v- | No. 16-cv-5980 (RJS) |
| | <u>OPINION & ORDER</u> |
| UNITED STATES OF AMERICA, | |
| *Respondent.* | |

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

Petitioner Christopher Ramirez, who is incarcerated and proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence for (1) participating in a narcotics distribution conspiracy and (2) using a firearm during and in relation to that conspiracy. (Doc. No. 99 at 7; Doc. No. 102 at 15.)[1]  In addition, Ramirez seeks leave to file a second supplemental petition[2] that requests, in the alternative, a resentencing in light of the Second Circuit's decision in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018).  (Doc. No. 107 at 6–

---

[1] Unless otherwise noted, all docket citations refer to the docket in Ramirez's criminal case, *United States v. Ramirez*, No. 13-cr-135 (RJS).  In addition, the facts referenced herein are drawn from the trial transcript ("Tr.") and Ramirez's presentence investigation report ("PSR") (Doc. No. 58).  In making its ruling, the Court has also considered Ramirez's original petition (Doc. No. 99), Ramirez's two supplemental petitions (Doc. Nos. 102, 107), the government's two memoranda in opposition (No. 16-cv-5980, Doc. Nos. 8, 16), and Ramirez's motion for a sentence reduction (discussed below).

[2] Ramirez previously requested leave to file a first supplemental petition that amended his original petition "due to the vague and conclusory nature of the allegations contained in [his original section 2255 petition]" (Doc. No. 102 at 1), which the Court granted (Doc. No. 108).

8.)  Finally, in a separate motion ("Ramirez Mot."), Ramirez seeks to reduce his sentence pursuant to section 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222.[3]  For the reasons set forth below, Ramirez's petition for habeas corpus, his motion for leave to file a second supplemental petition, and his motion to reduce his sentence under the First Step Act are DENIED.

## I. BACKGROUND

From approximately mid-2008 to April 2009, Ramirez was a member of a drug crew, led by Alfonso Vellon, that sold crack cocaine and marijuana on 174th Street in the Bronx.  (PSR ¶¶ 10, 12.)  During the six months or so that Ramirez participated in the drug conspiracy, he was responsible for the distribution of approximately 2.6 kilograms of crack cocaine, as well as five kilograms of marijuana.  (*Id.* ¶ 15.)  In addition to selling drugs, Ramirez served as an "enforcer" for the crew, ensuring that no one outside of the crew sold drugs within the crew's territory.  (*Id.* ¶ 11.)

On April 18, 2009, Jason Ozuna, a rival drug dealer who had been selling drugs on 174th Street before Vellon and his crew arrived, confronted Ramirez and Vellon about selling crack cocaine in what Ozuna claimed was his territory.  (*Id.* ¶ 13.)  Ramirez and Ozuna started to fight, but were soon separated.  (*Id.*)  After the fight, someone yelled "everyone bring your biggest guns."  (*Id.*)  Later that day, Ramirez returned to the scene of the fight with a .45 caliber semiautomatic handgun, and Ozuna came with a 12-gauge shotgun.  (*Id.* ¶ 14.)  When the two men saw each other, they fired their weapons.  (*Id.*)  Ramirez's shot struck Ozuna in the back of the head, leaving him partially paralyzed.  (*Id.*)

---

[3] Because this motion was mailed directly to the Court instead of being docketed, it is appended to this Opinion and Order.

On August 9, 2013, a grand jury returned an indictment charging Ramirez with (1) conspiracy to distribute (and possess with intent to distribute) 280 grams or more of crack cocaine and an unspecified amount of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D); and (2) the use and carrying of a firearm during and in relation to that drug-trafficking conspiracy in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(A)(iii) and 18 U.S.C. § 2. (Doc. No. 15 ¶¶ 2–4.) On September 9, 2013, the government filed a prior felony information pursuant to 21 U.S.C. § 851 based on Ramirez's October 4, 2007 conviction in New York state court for criminal possession of a narcotic drug; as a result of the prior felony, under the law as it then existed, Ramirez faced a mandatory sentence of twenty years on the conspiracy count, *see* 21 U.S.C. § 841(b), and a mandatory consecutive sentence of ten years on the firearms count, *see* 18 U.S.C. § 924(c)(1)(A)(iii). Trial commenced on October 1, 2013. (Minute Entry for Proceedings Held Oct. 1, 2013.) The government's case-in-chief included testimony from two cooperating witnesses – Vellon, the leader of the alleged drug conspiracy, and Ozuna, the rival drug dealer allegedly shot by Ramirez. (*See, e.g.*, Tr. at 268:13–269:23, 66:8–66:18.) The government also presented DNA evidence linking Ramirez to the gun recovered at the crime scene. (*Id.* at 438:15–438:18.) At the close of the government's case-in-chief, Ramirez moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, and the Court orally denied the motion on the record. (*Id.* at 495:5–495:18.) On October 7, 2013, the jury returned guilty verdicts on both counts. (*Id.* at 708:17–20, 708:25–709:2.) In response to two special interrogatories, the jury also found that the drug conspiracy involved 280 grams or more of crack cocaine and that Ramirez discharged a firearm or aided and abetted the discharge of a firearm in or about April 2009. (*Id.* at 708:21–24, 709:3–6.)

On December 9, 2013, Ramirez renewed his Rule 29 motion for acquittal on the ground that the evidence presented by the government was insufficient to sustain his conviction. (Doc.

Nos. 44, 45.)   In the alternative, Ramirez sought a new trial pursuant to Rule 33, also based primarily on the insufficiency of the evidence.  (Doc. No. 45 at 5–6.)

On January 7, 2014, in connection with the sentencing of cooperating witness Vellon, the Court learned that Vellon's Pre-Sentence Investigation Report ("PSR") predated Vellon's testimony at Ramirez's trial.  (Doc. No. 67 at 3.)  Accordingly, the Court directed the government to address whether it was in possession of Vellon's PSR at the time of trial and whether it improperly withheld portions of the PSR from the defense.  (Doc. No. 54.)  After the government acknowledged that certain portions of the PSR should have been disclosed pursuant to both the Jencks Act, 18 U.S.C. § 3500, and *Giglio v. United States*, 405 U.S. 150 (1972), Ramirez contended that this failure to disclose exculpatory evidence warranted a new trial.  (Doc. No. 67 at 3.)

At the outset of Ramirez's sentencing hearing on May 27, 2014, the Court orally denied Ramirez's renewed motion for a judgment of acquittal and his motion for a new trial.  (Doc. No. 64 at 5–7.)  This oral ruling was followed by a June 9, 2014 written opinion explaining the Court's reasoning – initially filed under seal.   (Doc. No. 67.)   In short, the Court concluded that (1) sufficient evidence supported Ramirez's conviction on both charged counts; and (2) although the government conceded that it should have disclosed portions of Vellon's PSR pursuant to the Jencks Act and *Giglio*, that failure to disclose did not prejudice Ramirez within the meaning of *Giglio*, and – for essentially the same reasons – the Jencks Act violation amounted to harmless error.  (*Id.* at 18.)

The Court sentenced Ramirez on May 27, 2014, principally to thirty years' imprisonment, to be followed by a ten-year term of supervised release.  (Doc No. 64 at 28.)  That thirty-year sentence reflected the mandatory minimum sentence required by law:  twenty years for the narcotics distribution conspiracy and ten years for using (and discharging) a firearm in furtherance

4

of that conspiracy, to run consecutive to the sentence imposed on the narcotics count as required by the statute.   (PSR ¶¶ 2–3); *see* 21 U.S.C. § 841(b)(1)(A)–(b)(1)(A)(iii); 18 U.S.C. § 924(c)(1)(A)(iii)–(c)(2).

Ramirez appealed his conviction.  (Doc. No. 61.)  After filing his notice of appeal, Ramirez requested a change of counsel before the Second Circuit, and he was appointed new appellate counsel pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.  *See United States v. Ramirez*, No. 14-1992, ECF No. 16 (2d Cir. July 30, 2014).  On appeal, Ramirez primarily argued that he was entitled to a new trial because of the government's failure to disclose portions of Vellon's PSR before Ramirez's trial. *See id.*, ECF No. 45 at 21–23.  On October 7, 2015, the Second Circuit affirmed Ramirez's judgment of conviction, concluding that any failure of the government to disclose impeachment material did not prejudice Ramirez within the meaning of *Giglio* and *Brady v. Maryland*, 373 U.S. 83 (1963).  *See United States v. Ramirez*, 628 F. App'x 15, 17–18 (2d Cir. 2015).

Ramirez, proceeding pro se, subsequently petitioned the Court to vacate, set aside, or correct his thirty-year mandatory minimum sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 99.)  Ramirez later sought leave to file a supplemental petition "due to the vague and conclusory nature of the allegations contained in [his original section 2255 petition]."  (Doc. No. 102 at 1.)  The Court granted Ramirez's request (Doc. No. 108), whereupon Ramirez filed his first supplemental petition.  Taken together, Ramirez's petition and first supplemental petition allege three categories of claims.  First, Ramirez asserts various theories of ineffective assistance by his trial and appellate counsel, which are discussed in greater detail below.  (Doc. No. 102 at 1–15; Doc. No. 99 at 7–9.)  Second, Ramirez reiterates his claim (raised on direct appeal) that the government withheld exculpatory or impeaching evidence in violation of *Brady* and *Giglio*, and that he was "greatly prejudiced by this Brady violation."  (Doc. No. 99 at 9.)  And third, Ramirez argues that the

statutory language of 18 U.S.C. § 924(c) is unconstitutionally vague, requiring that his firearm conviction be vacated.  (*Id.* (citing *Johnson v. United States*, 576 U.S. 591 (2015)).)

On November 2, 2016, the government filed its response, opposing each claim in Ramirez's petition and first supplemental petition.  (16-cv-5980, Doc. No. 8.)  On May 8, 2017, Ramirez submitted a letter requesting that the Court hold this matter in abeyance because he had not yet received the government's response, and requesting leave to file a reply after receiving the government's response.  (Doc No. 105 at 2.)  On May 15, 2017, the Court granted Ramirez's request and held this matter in abeyance (Doc. No. 106), but the Court never received a reply from Ramirez.

On August 12, 2019, Ramirez then filed a pro se motion seeking leave to file a second supplemental petition.  (Doc. No. 107.)  In this second supplemental petition, Ramirez argues that he is entitled to a new sentencing in light of the Second Circuit's decision in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018).  (Doc. No. 107 at 2–3.)  The government opposed the motion, arguing that *Townsend* does not support resentencing in Ramirez's case and that Ramirez's motion to supplement his original petition is untimely.  (16-cv-5980, Doc. No. 16.)

Finally, Ramirez submitted a pro se motion dated January 17, 2020, seeking to reduce his sentence to time served or, in the alternative, to twenty years' imprisonment, pursuant to section 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5222.  (Ramirez Mot.)  In essence, Ramirez contends that the First Step Act modified the mandatory minimum penalties applicable to his sentence and asks this Court to modify his term of imprisonment accordingly.  (*See id.* at 1–2.)

## II. Discussion

### A.   Ramirez's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2255

A prisoner in federal custody may move to vacate, set aside, or correct his or her sentence under 28 U.S.C. § 2255(a) if "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  Relief under section 2255 is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citation and quotation marks omitted).  In his petition (as amended by his first supplemental petition), Ramirez raises several constitutional challenges to his conviction, which the Court addresses in turn.

#### 1.   Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel, *see* U.S. Const. amend. VI, which the Supreme Court has held encompasses the right to *effective* assistance of counsel, *see generally Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail on the basis of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 687–88, 694. A court must reject a habeas petitioner's ineffective assistance of counsel claim if it fails to meet either prong.  *See Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013).

Under *Strickland*'s first prong, a court "must judge [counsel's] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' . . . and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). The court must start from the presumption that counsel's conduct fell "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 690–91). Because there are many different ways to provide effective assistance in any given case, and because "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," there is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

As for *Strickland*'s second prong, a "reasonable probability" that the outcome would have been different but for counsel's deficient performance is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A]n 'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). In other words, to find prejudice, a court must conclude that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland*, 466 U.S. at 686).

Ramirez alleges a variety of errors by counsel during both his trial and his subsequent appeal. Specifically, Ramirez claims that his trial counsel, Calvin Harold Scholar, failed to (1) present Ramirez's jail records to the jury showing that Ramirez was incarcerated during part of the drug distribution conspiracy, (2) challenge the sufficiency of the indictment on duplicity

grounds, (3) object to four categories of supposedly erroneous jury instructions, (4) challenge the

sufficiency of the evidence supporting aiding-and-abetting liability for Ramirez's firearm offense,

(5) discover material that could have been used to impeach one of the government's witnesses,

(6) present exculpatory videotapes to the jury showing a conversation between Ramirez and the

government's cooperating witness Vellon wherein Vellon allegedly said he and Ramirez had never

done anything illegal together, (7) "compel" testimony from a defense witness who threatened to

invoke his Fifth Amendment privilege, and (8) obtain sufficient materials to prepare an adequate

defense or meet with Ramirez frequently enough prior to trial.  (Doc. No. 99 at 7–9; Doc. No. 102

at 1–14.)  Ramirez further argues that his appellate counsel, Harry Sandick, provided ineffective

assistance by failing to raise on appeal the same issues regarding the (1) duplicity of Ramirez's

indictment, (2) erroneous jury instructions, and (3) sufficiency of the evidence regarding aiding-

and-abetting liability.  (Doc. No. 102 at 14–15.)  As explained below, each of these claims of

ineffective assistance fails under one or both of the *Strickland* prongs.

### a.    Failure to Introduce Jail Records

Ramirez asserts that his trial counsel provided ineffective assistance by declining to present

to the jury allegedly exculpatory jail records that would have demonstrated that Ramirez was

incarcerated for a portion of 2008.  (Doc. No. 102 at 3.)  According to the superseding indictment,

the narcotics conspiracy took place "[f]rom in or about 2008, up through and including in or about

April 2009."  (Doc. No. 15 at 1.)  At trial, Ramirez's co-conspirator Vellon testified that Ramirez

was involved in the narcotics conspiracy in "the middle of 2008 to the end of 2008."  (Tr. 246:1–

2.) Had Ramirez's jail records been presented at trial, he argues, "they would have raised sufficient

doubt in the jury as to . . . the truthfulness of Vellon's testimony" and would have shown that it

was "factually impossible for [Ramirez] to have been involved in any kind of conspiracy" during

the time period testified to by Vellon.  (Doc. No. 102 at 3.)

The Court first notes the limited scope of Ramirez's argument.  He is *not* arguing that the jail records would have contradicted the timeframe of the conspiracy supplied *in the superseding indictment*, which referred nonspecifically to the conspiracy's beginning sometime in 2008.  (Doc. No. 15 at 1.)  Indeed, the jail records, which show Ramirez's incarceration for a portion of 2008, do not remotely establish that it was "factually impossible" that he participated in the conspiracy during the entirety of the period alleged in the superseding indictment.  Additionally, regardless of precisely when the conspiracy began, the shooting of rival drug dealer Jason Ozuna, which occurred in April 2009 – at which point Ramirez was *not* incarcerated – clearly took place in the timeframe alleged in the indictment and was sufficient, by itself, to prove the existence of the conspiracy in question and Ramirez's participation in it.  *See, e.g.*, *United States v. Brewer*, 1 F.3d 1430, 1437 (4th Cir. 1993) (rejecting defendant's challenge to his conspiracy conviction when the government's evidence indicated participation in the conspiracy beginning at least one or two months after the timeframe alleged in the indictment); *cf. United States v. Carson*, 702 F.2d 351, 361 n.16 (2d Cir. 1983) (describing caselaw sustaining a conspiracy conviction despite "a year-long" gap in the government's evidence) (citing *United States v. Stromberg*, 268 F.2d 256 (2d Cir. 1959)).

Instead, Ramirez argues that although the jail records do not directly exculpate him of the charged crimes, they might have impeached a portion of Vellon's testimony, thereby undermining Vellon's credibility.  But this theory does not establish prejudice within the meaning of *Strickland*, nor does it demonstrate that counsel performed deficiently by not introducing the jail records.

First, while *Strickland*'s prejudice inquiry "necessarily require[s] a court to 'speculate' as to the effect of the new evidence," the Court is not persuaded that the introduction of the jail records would have appreciably decreased the probability of Ramirez's conviction.  *Andrus v. Texas*, 140 S. Ct. 1875, 1887 (2020) (citation and some quotation marks omitted).  For starters,

Ramirez's trial counsel *did* attempt to cast doubt on Vellon's testimony on this point, crossing Vellon vigorously on the specific dates that Ramirez participated in the conspiracy in 2008 to make the jury aware of potential truthfulness issues with Vellon's testimony.  (Tr. at 404:22–405:15.) The jury was not convinced and convicted nonetheless.  But even if it could be argued that the jail records would have led the jury to discount Vellon's testimony in its entirety, ample other evidence connected Ramirez to the crimes charged, such as Ramirez's DNA on the trigger of the gun used to shoot Jason Ozuna (Tr. at 438:14–18) and the testimony of Ozuna himself, who identified Ramirez as the shooter (Tr. at 68:4–20).  *Strickland* requires showing not just a reasonable probability that adequate performance of counsel would have landed additional blows against a witness or altered the jury's perception of that witness, but a reasonable probability that "*the outcome of the proceeding*" would have been different.  466 U.S. at 684 (emphasis added).  Here, there is no such probability that introduction of the jail records would have prevented Ramirez's conviction.

Nor can it be said that counsel's failure to introduce the jail records constituted deficient performance under *Strickland*'s first prong.  To state the obvious, introducing the jail records would have required informing the jury not only that Ramirez had been previously incarcerated, but that the incarceration resulted from drug offenses similar to what was charged here.  (*See* Doc. No. 102, Ex. B at 3.)  Any doubt that such a disclosure would have cast on Vellon's credibility would likely have been offset by the considerable prejudice that would have been cast on Ramirez himself as a result of the disclosure.  "[S]trategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (quoting *Strickland*, 466 U.S. at 690–91).  Under the

circumstances, it was entirely reasonable for counsel to have quickly determined that the risk-reward calculus outlined above counseled against introducing the jail records. As such, the decision not to introduce Ramirez's jail records plainly fell within the scope of "prevailing professional norms," and Ramirez cannot prevail on his claim that failure to introduce the jail records was ineffective assistance. *Strickland*, 466 U.S. at 688.

### b.   Failure to Challenge the Indictment as Duplicitous

Ramirez next contends that his trial counsel provided ineffective assistance by failing to challenge the sufficiency of Ramirez's indictment "on duplicity grounds." (Doc. No. 102 at 3.) "An indictment is impermissibly duplicitous where: (1) it combines two or more distinct crimes into one count in contravention of Fed.[ ]R.[ ]Crim.[ ]P. 8(a)'s requirement that there be 'a separate count for each offense,' and (2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).

Ramirez argues that Count One of his indictment impermissibly combined multiple drug offenses into one count, as it charged him with conspiracy to possess with intent to distribute both crack cocaine *and* marijuana. (Doc. No. 102 at 3–4.) The Supreme Court has long made clear, however, that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for '[t]he conspiracy is the crime, and that is one, however diverse its objects.'" *Braverman v. United States*, 317 U.S. 49, 54 (1942) (quoting *Frohwerk v. United States*, 249 U.S. 204, 210 (1919)). In line with this principle, the Second Circuit has held that a narcotics conspiracy count is not duplicitous merely because it aggregates multiple narcotics transactions involving more than one type of controlled substance. *See United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989). Thus, since Ramirez was charged with and convicted of participating in a *single* conspiracy to possess with intent to distribute multiple controlled substances, in violation of 21 U.S.C. § 846 (Doc. No. 15 ¶¶ 1–3), Count One of his indictment was not impermissibly

duplicitous.  And because counsel "is not required to engage in the filing of futile or frivolous motions," *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987), Ramirez cannot show that his counsel performed deficiently in declining to raise a duplicity challenge to Count One – or, for that matter, that he was prejudiced by this decision, as the Court would have rejected such a challenge if it had been raised.

As to Count Two, Ramirez argues that it impermissibly combined the crimes of "using and carrying a firearm during and in relation to the drug-trafficking offense" and "possession of a firearm in furtherance of that crime."  (Doc. No. 102 at 5 (internal quotation marks omitted).) Ramirez contends that the record is unclear as to which of these supposedly two separate offenses the jury convicted him of.  (*Id.*)  While Ramirez is correct that some courts of appeals have concluded that 18 U.S.C. § 924(c)(1)(A) enumerates two separate offenses, *see United States v. Gamboa*, 439 F.3d 796, 809–810 (8th Cir. 2006); *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004), other courts of appeals have concluded that the statutory terms "us[ing] or carry[ing]" and "possess[ing]" a firearm are merely different *means* of committing the same crime that do not raise duplicity concerns when charged in the same count, *see United States v. Haynes*, 582 F.3d 686, 703–04 (7th Cir. 2009); *United States v. Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006); *see also United States v. Daugerdas*, 837 F.3d 212, 225 (2d Cir. 2016) (explaining that a count is not duplicitous where "it includes . . . multiple ways of committing a single offense").

At the time of Ramirez's indictment and trial, the Second Circuit had not decided the issue. *See United States v. Jackson*, 513 F. App'x 51, 53–54 (2d Cir. 2013) (declining to resolve whether section 924(c)(1)(A) creates multiple offenses due to a lack of prejudice arising from any potential

duplicity).[4]  Nevertheless, by 2013, multiple courts within this Circuit had found the reasoning of the Ninth and Seventh Circuits to be more persuasive and had held that section 924(c)(1)(A) merely sets forth alternative means of committing the same offense.  *See, e.g.*, *United States v. Barret*, No. 10-cr-809 (S-3) (KAM), 2011 WL 6780901, at *3 (E.D.N.Y. Nov. 27, 2011); *United States v. Jackson*, 749 F. Supp. 2d 19, 30 (N.D.N.Y. 2010), *aff'd on other grounds*, 513 F. App'x at 54–55.  The Court agrees with that analysis.  But the mere existence of contrary authority on the subject, alone, reveals that Ramirez's trial counsel's "failure to object to the language of Count [Two] – if considered a failure at all – certainly [did] not rise to the level of constitutionally ineffective assistance."  *Dewar v. United States*, Nos. 06-cr-311-1 (KMK), 17-cv-2330 (KMK), 2020 WL 1673791, at *22 (S.D.N.Y. Apr. 4, 2020); *see also Premo v. Moore*, 562 U.S. 115, 124 (2011) (identifying as "the relevant question under *Strickland*" whether any "competent attorney would think [that the] motion [in question] would have failed" because, if so, failure to file the motion is not deficient performance).

Moreover, even if it could be argued that Count Two of Ramirez's indictment was duplicitous, Ramirez cannot show that he was prejudiced by this duplicity (or his counsel's failure to object to it).  *See Sturdivant*, 244 F.3d at 75.  As the Second Circuit explained in a nearly identical context – in a case decided mere months before Ramirez's trial – where "the trial record and the charge given to the jury" make clear which conduct under section 924(c)(1)(A) a defendant is charged with, a defendant has experienced no prejudice because he "cannot show that he was deprived of a unanimous jury verdict."  *Jackson*, 513 F. App'x at 54.  Here, through the use of a special verdict form, the Court asked the jury to indicate "whether a firearm was discharged during

---

[4] To date, the Second Circuit still appears not to have reached the issue.  *See United States v. Walker*, 789 F. App'x 241, 243 (2d Cir. 2019) (declining to resolve whether a section 924(c)(1)(A) count was duplicitous under plain error review).

[the] use, carrying, or possession" of a firearm as charged in Count Two.  (Tr. at 703:15–16.)  After

deliberating, the jury unanimously found that Ramirez "discharged a firearm or aided and abetted

the discharge of a firearm in or about April 2009."   (*Id.* at 709:4–5.)   Discharging a firearm

necessarily constitutes using it, *see Bailey v. United States*, 516 U.S. 137, 148 (1995) (explaining

that "use" of a firearm "certainly includes . . . most obviously, firing or attempting to fire [it]"),

*superseded by statute on other grounds as recognized in Welch v. United States*, 578 U.S. 120,

133 (2016), and also entails carrying and possessing it.  Thus, as in *Jackson*, "[a]ll prongs of

[section] 924(c) were . . . satisfied by [Ramirez's] conduct as found by the jury," and Ramirez can

therefore claim no prejudice from the way that Count Two of his indictment was drafted or

presented to the jury.  513 F. App'x at 54.

### c.        Failure to Object to Jury Instructions

Next, Ramirez claims that his trial counsel provided ineffective assistance by failing to

object to four separate aspects of the Court's jury instructions regarding his firearm count

(Count Two) – namely, that the Court (1) constructively amended the indictment by intermixing

the "in furtherance of" and "during and relation to" language of section 924(c); (2) omitted an

essential element of the section 924(c) charge by omitting the word "during" at two points;

(3)  improperly instructed the jury regarding the meaning of "carrying" a firearm, as used in

18 U.S.C. § 924(c); and (4) improperly instructed the jury with respect to aiding-and-abetting

liability in light of the Supreme Court's decision in *Rosemond v. United States*, 572 U.S. 65 (2014).

(Doc. No. 102 at 7–10.)  Ramirez has failed to show either that his counsel performed deficiently

in failing to object to any of these instructions or that he was prejudiced as a result.

### i.        Aiding-and-Abetting "In Furtherance of" Instruction

First, the Court did not constructively amend Count Two of Ramirez's indictment in

instructing the jury.   As the Second Circuit has explained, "[t]o establish a constructive

amendment," a defendant must show that "the jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment."  *United States v. Rigas*, 490 F.3d 208, 227 (2d Cir. 2007) (citation and quotation marks omitted).  Such a constructive amendment occurs where "the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment."  *Id.* at 225 (citation, quotation marks, and alterations omitted).  Here, the Court's instruction regarding Count Two closely tracked the language of section 924(c)(1)(A) and the language of Count Two of Ramirez's operative indictment.  (*Compare* Tr. at 661:15–20, *with* Doc. No. 15 ¶ 4.)  Given the nearly identical phrasing of Count Two and the Court's jury instructions, it cannot be said that the Court altered an essential element of Count Two or broadened the possible bases for Ramirez's conviction on that count.

Ramirez focuses his claim of error on the following instruction given by the Court regarding aiding-and-abetting liability:

> [I]t would be sufficient for you to convict if you find that the evidence proves beyond a reasonable doubt that the defendant aided and abetted another person in the use, carrying, and possession of a firearm *in furtherance of* the drug trafficking conspiracy.

(Tr. at 665:9–13 (emphasis added).)  Specifically, Ramirez contends that, in giving this instruction, the Court permitted the jury to convict him of a crime not charged in the indictment – i.e., aiding and abetting the use or carrying of a firearm *in furtherance of* the drug trafficking conspiracy, rather than aiding and abetting the use or carrying of a firearm *during and in relation to* the drug trafficking conspiracy.  (Doc. No. 102 at 7.)

Ramirez cannot dispute that the Court correctly instructed the jury – including with respect to aiding and abetting – when it initially described the conduct charged in Count Two.  (*See* Tr. at 661:15–20 ("Second, that the defendant used or carried the firearms or aided and abetted the use

o[r] carrying the firearms *during and in relation to* the specified narcotics conspiracy or at th[e] time defendant possessed the firearms or aided and abetted the possession of the firearms *in furtherance of* the same conspiracy." (emphasis added)).)  The Court also carefully defined and distinguished between the terms "use," "carrying," and "possession" as charged in the indictment (*see id.* at 662–64), so there could be no suggestion that the jury was somehow permitted to intermingle these terms such that "it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment."  *Rigas*, 490 F.3d at 227 (citation omitted).

Moreover, even if the Court's instruction concerning aiding and abetting erroneously suggested that the jury could convict Ramirez for aiding and abetting the use or carrying of a firearm "in furtherance" of a drug conspiracy, Ramirez cannot show that such an instruction "broaden[ed] the possible bases for conviction from th[ose] which appeared in the indictment." *Id.* (citation and alterations omitted).  To the contrary, courts in this Circuit "have recognized that the 'in furtherance of' requirement of the statute is by congressional design more stringent than the 'during and in relation to' standard." *United States v. Fleurissaint*, No. 03-cr-906 (RPP), 2005 WL 120350, at *4 (S.D.N.Y. Jan. 20, 2005) (quoting *United States v. Mackey*, 265 F.3d 457, 461–62 (6th Cir. 2001)); *accord Chen Xiang v. United States*, No. 09-cv-7579 (AKH), 2010 WL 3155052, at *6 (S.D.N.Y. Aug. 6, 2010) ("[E]ven if the instruction does erroneously equate the two standards, then any error was harmless because the standard used by the court, the 'in furtherance of' standard, is considered the stricter of the two standards.").  In other words, even if the jury members had been under the impression that they were required to find that Ramirez had aided or abetted the use or carrying of a firearm "in furtherance of" the conspiracy, that error worked to Ramirez's benefit by requiring a higher threshold of involvement of the gun in the conspiracy.  As a result, not only was Ramirez not prejudiced by his counsel's failure to object to

the aiding-and-abetting "in furtherance of" instruction, but his counsel also did not perform inadequately by leaving in place an instruction that arguably worked to his client's benefit.

Finally, as discussed in greater detail below, no prejudice resulted from Ramirez's counsel's failure to object to the aiding-and-abetting "in furtherance of" instruction for the additional reason that there was ample evidence for the jury to have convicted Ramirez as a principal. *See* Part II.A.1.d. Thus, even if the Court's instruction amounted to a constructive amendment of the indictment, and even if Ramirez's counsel's failure to object to that instruction was unreasonable, Ramirez still cannot show that "there is a reasonable probability that, but for [his] counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### ii.    "During and in Relation to" Instruction

Nor did the Court constructively amend the indictment when it instructed the jury as to using or carrying a firearm "during and in relation to" the drug trafficking conspiracy. (*See* Doc. No. 102 at 8.) Specifically, Ramirez points to two instances in which the Court omitted the word "during" from the phrase "during and in relation to," and he argues that his counsel's failure to object to these instructions prejudiced him by "effectively reliev[ing] the government of its burden of proof on an essential element of its case." (*Id.*)

As with the instructions discussed above, however, Ramirez does not dispute that the Court correctly instructed the jury as to the "use" and "carrying" of a firearm when it first described the conduct charged in Count Two. (*See* Tr. at 661:15–17 (describing the government's burden as having to prove that Ramirez "used or carried the firearms or aided and abetted the use o[r] carrying the firearms *during and* in relation to the specified narcotics conspiracy").) The Court also repeated this language when instructing the jury regarding the "use" of a firearm. (*See id.* at 662:11–17.) As a result, the Court's "instructions, taken as a whole, clearly defined the elements

of the charged crime," *Marmolejas v. United States*, Nos. 99-cr-1048 (DC), 05-cv-10693 (DC), 2010 WL 3452386, at *10 (S.D.N.Y. Sept. 2, 2010), and Ramirez cannot show how the omission of the word "during" in two other instances "so altered an essential element of the charge that, upon review, it is uncertain whether [he] was convicted of conduct that was the subject of the grand jury's indictment," *Rigas*, 490 F.3d at 227 (citation omitted).  Given this lack of ambiguity in the Court's instructions, Ramirez's trial counsel did not perform deficiently by failing to object to the omission of the word "during."

In addition, the jury's special interrogatory finding prevents Ramirez from demonstrating any prejudice from his trial counsel's failure to object to this instruction.  As explained above, the jury convicted Ramirez not only of using or carrying a firearm (or aiding and abetting the same), but of "discharg[ing] a firearm or aid[ing] and abett[ing] the discharge of a firearm in or about April 2009." (Tr. at 709:4–5.)  Specifically, the Court instructed the jury that, to convict Ramirez on Count Two, it was required to find that Ramirez discharged (or aided and abetted the discharge of) "a Master Arms .45 caliber semiautomatic gun admitted as Government Exhibit 1" (*id.* at 668:19–20) – that is, the gun that government witnesses testified was used to shoot Jason Ozuna and that contained traces of Ramirez's DNA (*see, e.g.*, *id.* at 179, 431–33, 566, 577–78).  In finding that Ramirez discharged that firearm in April 2009 to shoot Ozuna, the jury *necessarily* concluded that Ramirez used or carried the firearm (or aided and abetted the same) "during" the charged narcotics conspiracy.  Accordingly, even if Ramirez's trial counsel performed deficiently in failing to object to the jury charge and insist on the inclusion of the word "during," it had no impact on the jury's ultimate verdict.

### iii.     "Carrying" Instruction

Ramirez further claims that his trial counsel provided ineffective assistance by failing to object to the Court's instruction regarding the "carrying" of a firearm.  (Doc. No. 102 at 9.)  At Ramirez's trial, the Court instructed the jury as follows:

> [I]n order to prove that the defendant carried a firearm, the prosecution must prove beyond a reasonable doubt that the defendant had a weapon within his control so that it was available in such a way that it furthered the commission of the crime. The defendant need not have held the firearm physically or have had actual possession of it on his person.

(Tr. at 662:24–663:4.)  Citing the Second Circuit's decision in *United States v. Persico*, Ramirez contends that this instruction misstates the law because it fails to articulate the types of evidence required to prove "carrying" a firearm under section 924(c) – namely, that "the defendant either (1) had physical possession of the firearm, or (2) moved the firearm from one place to another," 164 F.3d 796, 802 (2d Cir. 1999).  (Doc. No. 102 at 9.)  But Ramirez reads *Persico* too narrowly. While *Persico* states that having physical possession of a firearm or moving the firearm from one place to another is sufficient to satisfy the "carry" prong of section 924(c), that case did not hold that those types of evidence are the *only* ones that are sufficient.  To the contrary, *Persico* recognized that "the Supreme Court has . . . ruled that 'carrying,' for purposes of section 924(c), broadly includes the possession of a firearm in a trunk or a glove compartment, even if not 'readily accessible.'"  *Persico*, 164 F.3d at 803 (citing *Muscarello v. United States*, 524 U.S. 125, 131–37 (1998)).  And in *Muscarello*, the Supreme Court specifically held that the word "carry" in section 924(c)(1) is not limited to carrying a firearm "on the person."  524 U.S. at 132.  This Court's instructions regarding "carrying" a firearm therefore fit comfortably within the definitions articulated in both *Persico* and *Muscarello*.

And even if it could somehow be argued that Ramirez's counsel performed deficiently in failing to challenge the Court's "carrying" instruction, Ramirez again cannot demonstrate any

prejudice from that error. As the Second Circuit has made clear, "[w]here, as here, the indictment charged the defendant with using and carrying a firearm, the defendant may be convicted if he *either* used or carried a firearm." *United States v. Cox*, 324 F.3d 77, 82 (2d Cir. 2003) (citation, quotation marks, and alterations omitted). In finding that Ramirez "discharged a firearm or aided and abetted the discharge of a firearm in or about April 2009" (Tr. at 709:4–5), the jury necessarily concluded that Ramirez either "used" or aided and abetted the "use" of a firearm – not simply that he "carried" a firearm. *See United States v. Desena*, 287 F.3d 170, 180 (2d Cir. 2002) (explaining that a defendant "uses" a firearm within the meaning of section 924(c)(1)(A) by, "among other things . . . firing or attempting to fire a firearm") (citation omitted), *abrogated on other grounds by United States v. Davis*, 139 S. Ct. 2319 (2019), *as recognized in United States v. Capers*, 20 F.4th 105, 119 n.10 (2d Cir. 2021). Indeed, as discussed above, the Court specifically instructed the jury that "discharging a firearm would constitute use, carrying, *or* possession." (Tr. at 703:17–18 (emphasis added).) Accordingly, even if the Court had modified the instruction precisely as Ramirez now proposes, the jury's special interrogatory finding reveals that it still would have unanimously found Ramirez guilty under the "use" or "possession" prongs of section 924(c)(1)(A). Ramirez therefore suffered no prejudice as a result of his counsel's not challenging the "carrying" instruction.

### iv.   Aiding-and-Abetting Instructions

Ramirez also argues that his trial counsel provided ineffective assistance by not challenging the Court's jury instructions concerning aiding-and-abetting liability with respect to the firearm charge. (Doc. No. 102 at 9–10.) Specifically, Ramirez maintains "that the Supreme Court's decision in *Rosemond* narrowed the scope of criminal liability for aiding and abetting Section 924(c)(1)(A) offenses," and that the Court's jury instructions were inconsistent with *Rosemond*. (Doc. No. 102 at 9.)

21

Ramirez's argument ignores, however, that *Rosemond* was decided *after* the Court instructed the jury in this case.  Ramirez contends that "the Supreme Court decided *Rosemond* on March 5, 2014, almost three months before [he] stood trial." (*Id.* at 10.)  But that is incorrect.  The Court instructed the jury in Ramirez's case on October 4, 2013, and gave supplemental instructions in response to jury questions on October 7, 2013 – approximately five months before *Rosemond* was decided.  (*See* Tr. at 619:20–684:2, 698:21–701:21, 703:4–704:1.)  At the time the Court instructed the jury on aiding-and-abetting liability, Ramirez's counsel could not have challenged the Court's instructions under *Rosemond*, and his conduct – as measured at the time of the representation – cannot be said to have been unreasonable.  *See Mayo*, 13 F.3d at 533 ("Counsel is not required to forecast changes in the governing law.").

Even if *Rosemond* had been decided before the Court charged the jury, however, defense counsel behaved reasonably in declining to challenge the Court's instructions – and Ramirez was not prejudiced by that decision – because the Court's instructions were, if anything, *more* stringent than what *Rosemond* requires.  At the time the Court instructed the jury, the law in the Second Circuit regarding aiding-and-abetting liability for section 924(c) was clear:  aiding-and-abetting liability attached if a defendant "performed some act that directly facilitated or encouraged the use or carrying of a firearm." *United States v. Medina*, 32 F.3d 40, 45 (2d Cir. 1994).  The Court's instructions closely tracked this standard.  (*See* Tr. at 667:18–21 ("[Y]ou must find that the defendant performed some act that facilitated or encouraged the use of, the carrying of, or the possession of the firearm in relation to the underlying crime.").)

In *Rosemond*, however, the Supreme Court held that aiding-and-abetting liability under section 924(c) attaches when a "defendant actively participate[s] in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carry a gun during the crime's commission."  572 U.S. at 67.  In the years since *Rosemond* was decided, the Second

Circuit has observed that *Rosemond*'s "advance knowledge" standard "*expanded* aiding and abetting liability under Section 924(c) as previously recognized by [the Second Circuit]." *United States v. Rivera*, 571 F. App'x 55, 59 n.5 (2d Cir. 2014) (emphasis added). Consistent with pre-*Rosemond* precedent, the Court instructed the jury that "it [was] *not enough* to find that [Ramirez] performed an act to facilitate or encourage the commission of the underlying narcotics crime *with only the knowledge* that a firearm would be used or carried in the commission of that crime." (Tr. at 667:14–18 (emphasis added).) The Court's instruction therefore established a narrower scope of aiding-and-abetting liability than the "advance knowledge" standard endorsed in *Rosemond*, meaning that – to the extent the jury convicted Ramirez under an aiding-and-abetting theory – it would have found him guilty even under an instruction that precisely tracked the language from *Rosemond*. *Accord United States v. Young*, 561 F. App'x 85, 92 (2d Cir. 2014) ("By finding that [the defendant] encouraged the 'actual using, carrying of, or possession' of a firearm in the . . . robbery, the jury necessarily also had to find that he had advance knowledge of the firearm-related conduct, consistent with the Supreme Court's explication in *Rosemond*.").

Finally, Ramirez cannot show that he was prejudiced by his counsel's failure to challenge the Court's aiding-and-abetting instruction for the separate reason that there was ample evidence for the jury to have found Ramirez guilty of Count Two as a principal, not simply under an aiding-and-abetting theory. Ramirez contends that "[t]here was extensive testimonial evidence introduced at trial via cross-examination by the defense[] indicating that [Ramirez] did not himself use, carry or possess a firearm during the alleged conspiracy . . . [that] went uncontroverted by the government," and so "the aiding and abetting theory was the sole manner of sustaining" Ramirez's conviction on Count Two. (Doc. No. 102 at 10 n.*.) But Ramirez overstates the impact of his counsel's cross-examination and ignores the other evidence in the record from which the jury could have convicted Ramirez as a principal.

23

Ramirez points to three lines of questioning – one by the government during direct examination and two by defense counsel during cross-examination – posed to Melissa Huyck, the government's forensic expert who analyzed DNA swabs taken from the handgun used to shoot Jason Ozuna.  (*See id.* (citing Tr. at 445–47, 451–52, 459).)  While these questions highlight some limitations of the DNA evidence, they do not – as Ramirez seems to suggest – conclusively refute the portions of Huyck's testimony that would support a finding that Ramirez himself fired the handgun.  Indeed, defense counsel never addressed Huyck's key conclusion:  that it was 3.19 million times more likely that the DNA found on the handgun trigger matched a mixture of Ramirez's DNA and the DNA from two unknown, unrelated people than it was that the DNA matched a mixture of DNA from three unknown, unrelated people – i.e., three people other than Ramirez.  (*See* Tr. at 444:11–19.)  And even putting aside the DNA evidence altogether, Alfonso Vellon and Jason Ozuna both testified that Ramirez used the handgun to shoot Ozuna (*see* Tr. at 80, 331–32), and the government introduced video surveillance showing that Ramirez arrived near the spot of the shootout ten minutes before the shooting occurred (*see* Tr. at 334–50).  This evidence was more than sufficient for the jury to have found that Ramirez himself used the handgun (and discharged that handgun) – not merely that he aided and abetted such use.  In light of this evidence supporting primary liability, even if Ramirez's trial counsel performed deficiently by failing to challenge the Court's aiding-and-abetting instructions (which he did not), Ramirez cannot show that he was prejudiced by his attorney's decision not to challenge the Court's aiding-and-abetting charge.  *See United States v. Sebbern*, 641 F. App'x 18, 21 (2d Cir. 2015) (holding that it was unnecessary to determine whether the district court's aiding-and-abetting instruction was erroneous in light of *Rosemond* "because there was sufficient evidence to convict defendants as principals").

### d.     Failure to Challenge the Sufficiency of the Evidence Regarding Aiding-and-Abetting Liability

Also citing *Rosemond*, Ramirez argues that his trial counsel was ineffective for failing to challenge the sufficiency of the evidence that supported aiding-and-abetting liability.  (Doc. No. 102 at 10–11.)  But this claim fails for essentially the same reasons discussed above.  Although it is true that *Rosemond* was decided by the time the Court issued its decision on Ramirez's Rule 29 motion (*see* Doc. No. 64) – meaning that Ramirez's counsel ostensibly could have raised *Rosemond* in support of that motion challenging the sufficiency of the evidence as to aiding-and-abetting liability – it was perfectly reasonable for Ramirez's counsel to decline to do so, as such an argument would have been wholly meritless.  As noted previously, to the extent the jury even convicted Ramirez on an aiding-and-abetting theory, it did so under a more stringent standard for aiding-and-abetting liability than *Rosemond* requires.  Moreover, it is clear that the government's primary theory at trial – as evidenced by the two government witnesses who testified that Ramirez was the actual shooter and the evidence of Ramirez's DNA on the trigger of the handgun – was that Ramirez was liable under section 924(c) as a principal.  (*See* Tr. at 80, 332, 444.)  In light of this evidence (along with the futility of any argument premised on *Rosemond*), Ramirez's trial counsel reasonably focused his Rule 29 motion on challenging the sufficiency of the evidence supporting primary liability.  (*See* Doc. No. 45 at 4–5.)  That motion, of course, was unsuccessful.  But it was not unreasonable for Ramirez's trial counsel to forgo sufficiency arguments premised on *Rosemond*, nor was Ramirez prejudiced by the failure to raise such meritless arguments.  *See Nersesian*, 824 F.2d at 1322 (explaining that it is not deficient performance to decline "to engage in the filing of futile . . . motions."); *accord United States v. Doost*, 3 F.4th 432, 440 (D.C. Cir. 2021) ("[T]he failure to raise a meritless objection is not deficient performance.") (citation omitted).

> **e.      Failure to "Unravel *Brady* Information and Argue Prosecutorial Misconduct"**

Ramirez next argues that his trial counsel was ineffective in failing to uncover that one of the government's witnesses at trial, United States Attorney's Office Criminal Investigator Stefano Braccini, (1) had been the subject of an adverse credibility finding in an unrelated state-court case and (2) had been named as a defendant in an unrelated civil rights action alleging racial discrimination in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.  (Doc. No. 102 at 11–14.)   On May 27, 2016, the government sent a letter to Ramirez's appellate counsel informing him that the government had recently learned that Braccini had been the subject of an adverse credibility finding following a hearing in New York State Supreme Court on December 13, 2000.  (*See* 16-cv-5980, Doc. No. 8-4 ("Gov't Letter") at 1 (citing *People v. Kenneth Felder*, 2001 N.Y. Slip Op. 40064(U), 2001 WL 914115 (N.Y. Sup. Ct. May 16, 2001), *aff'd*, 754 N.Y.S. 2d 18 (1st Dep't 2003)).)   Although the government never disclosed that Braccini was named as a defendant in a separate civil rights action, that case is a matter of public record.  *See, e.g.*, *Cotterel v. N.Y.C. Transit Auth.*, No. 94-cv-4984 (EHN), 1996 WL 480788, at *3 (E.D.N.Y. Aug. 15, 1996).  Ramirez claims that these revelations about Braccini show that his trial counsel provided ineffective assistance by failing to satisfy his "duty to investigate the government's proposed witness and unravel the information himself."  (Doc. No. 102 at 12.)  But Ramirez's trial counsel did not perform deficiently in failing to uncover Braccini's adverse credibility finding or question Braccini about the unrelated civil case, nor was Ramirez prejudiced by the lack of any cross-examination on those subjects.

While Ramirez is correct that defense counsel have a duty to their clients to make reasonable investigations into adverse witnesses, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel

may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). Here, as the government's letter to Ramirez's appellate counsel reveals, the government *and Braccini himself* were both unaware of the state-court adverse credibility finding until it was uncovered during cross-examination in *United States v. Lo*, 14-cr-491 (VSB), a separate criminal case in the Southern District of New York in which Braccini served as a government witness.[5] (*See* Gov't Letter at 2.) While counsel in *Lo* could be commended for uncovering the state-court opinion regarding Braccini's credibility before trial in that case, it does not follow that Ramirez's trial counsel was deficient for failing to raise the opinion during cross-examination here. "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citation and quotation marks omitted). Given that even Braccini was unaware of the adverse credibility finding when he testified at Ramirez's trial, the Court is not persuaded that Ramirez's trial counsel fell below "prevailing professional norms" in failing to discover it for himself. *Strickland*, 466 U.S. at 688.

As to the civil rights action in which Braccini was named as a defendant, it is not clear what impeachment value it would have had during cross-examination of Braccini. While it is true that Braccini was originally named as a defendant in that action, judgment was entered in his favor, and the claims against him were dismissed with prejudice. *See Cotterel v. N.Y.C. Trans. Auth.*, No. 94-cv-4984, ECF No. 118 (E.D.N.Y. Sept. 29, 2000). Accordingly, it was perfectly reasonable of Ramirez's counsel not to raise this civil case during Braccini's cross-examination, as Braccini was ultimately vindicated in that separate action.

---

[5] As the government's letter suggests, this oversight may have been due in part to the fact that the state-court opinion finding Braccini's testimony not credible (along with the state case docket itself) consistently misspelled Braccini's name as "Bracinni." *See Felder*, 2001 WL 914115, at *1.

Finally, even if the Court were to conclude that Ramirez's trial counsel should have uncovered Braccini's adverse credibility finding and civil lawsuit and used them to impeach his credibility, it is obvious that Ramirez was not prejudiced by counsel's failure to do so.  Contrary to Ramirez's characterization of Braccini's testimony (*see* Doc. No. 102 at 13), Braccini did not vouch for or bolster the credibility of the government's key witnesses, Alfonso Vellon and Jason Ozuna.  Indeed, Braccini's brief direct testimony was limited almost entirely to recounting an interview of Ramirez that Braccini had conducted during the investigation and noting that Braccini had swabbed Ramirez's cheek for a DNA sample.  (*See* Tr. at 480–88.)  Thus, even if Ramirez's counsel had been able to undermine Braccini's credibility in the eyes of the jury, the government presented ample alternative – and more compelling – evidence of Ramirez's guilt, such as the DNA evidence found on the handgun, the surveillance footage showing Ramirez near the scene of the crime, and the eyewitness testimony of the shooting by Ozuna and Vellon.  (*See* Tr. at 80, 332, 334–50, 444.)  In light of this evidence, it cannot be said that Ramirez's counsel's having cross-examined Braccini in the manner that Ramirez proposes would have created a reasonable probability of a different verdict.  *See Strickland*, 466 U.S. at 694.

### f.    Failure to Introduce Cellblock Videotapes

Ramirez next argues that his trial counsel provided ineffective assistance by failing to seek cellblock videotapes that allegedly recorded Alfonso Vellon telling Ramirez that "[Ramirez] didn't deal drugs."  (Doc. No. 102 at 14.)  Ramirez argues that his trial counsel could have introduced these videotapes for their exculpatory value and used them to identify other potential witnesses who could testify on his behalf.  (*Id.*)  Contrary to Ramirez's assertions, however, his trial counsel did in fact seek to obtain the videotapes.  (*See* 16-cv-5980, Doc. No. 8-3 (email from defense counsel to prosecutors requesting the videotapes).)  Indeed, Ramirez's counsel explained his efforts to obtain the videotapes to the Court on the record on the day of jury selection.  (*See* Tr.

at 8.)  The available footage, however, contained no audio; it showed no more than silent footage of Ramirez "sitting down in a room with other inmates, eating snacks and chatting."  (16-cv-5980, Doc. No. 8-3.)  Accordingly, Ramirez's trial counsel made a "reasonable professional judgement" in declining to introduce videotapes of no apparent probative value at trial.  *Strickland,* 466 U.S. at 690.

To the extent that Ramirez argues his trial counsel should have nonetheless cross-examined Vellon regarding the alleged statements without any corroborating audio recordings, that claim is also without merit.  The Second Circuit has explained that "[d]ecisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim."  *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (citation, quotation marks, and alterations omitted).  Without any usable recordings to support a cross-examination of Vellon based on the alleged conversation with Ramirez in the cellblock – or any evidence at all, for that matter, that Vellon made any exculpatory statements about Ramirez – Ramirez's trial counsel made a reasonable strategic decision to devote his cross-examination to more fruitful topics, such as Vellon's prior inconsistent statements, his extensive criminal conduct, and his motivation to reduce his own sentence by cooperating with the government.  (*See* Tr. at 372–409, 415–16.)

### g.    Failure to "Compel" Marcus Ozuna to Testify

Ramirez also argues that his trial "counsel failed to have the [C]ourt compel the witness Marcus Ozuna to testify to exculpatory facts."  (Doc. No. 99 at 8.)  Ramirez claims that Marcus Ozuna (cousin to Jason Ozuna (*see* Tr. at 76:20)) "would have testified that the government[']s star witness ([Alfonso] Vellon) was lying concerning [Ramirez's] alleged involvement in a drug conspiracy."  (Doc. No. 99 at 8.)  But as Ramirez recognizes in his original habeas petition, his counsel *did* seek to call Marcus Ozuna as a witness.  (*Id.*)  After Marcus Ozuna spoke with Court-

appointed counsel, however, his counsel stated on the record that Ozuna would invoke his Fifth Amendment privilege if called.  (*See* Tr. at 557:25–558:4.)  Despite Ramirez's dissatisfaction with the end result, "it is a reasonable trial strategy to not call a witness who will assert his Fifth Amendment privilege."  *Canini v. United States*, Nos. 04-cr-283 (PAC), 10-cv-4002 (PAC), 2012 WL 832443, at *13 (S.D.N.Y. Mar. 12, 2012) (citing *Greiner v. Wells*, 417 F.3d 305, 323 & n.24 (2d Cir. 2005)).  Because Marcus Ozuna expressed his unequivocal intent to invoke his Fifth Amendment privilege if called as a witness, Ramirez's trial counsel "cannot be deemed ineffective for failing to take action that would have been futile."  *Savinon v. Mazucca*, 318 F. App'x 41, 44 (2d Cir. 2009) (holding that it was not unreasonable for counsel to decline to call a witness whose counsel had advised him to invoke his Fifth Amendment rights if called).  Similarly, Ramirez cannot show any prejudice from his counsel's decision not to call Ozuna, as he has not provided any evidence "supporting the notion that [Ozuna] would have either waived his Fifth Amendment privilege or in fact exculpated him."  *Lagares v. United States*, Nos. 10-cr-392 (CS), 15-cv-3391 (CS), 2016 WL 11651755, at *6 (S.D.N.Y. June 30, 2016) (collecting cases).

### h.    Lack of Materials to Prepare a Defense

Ramirez's final claim of ineffective assistance premised on his trial counsel's conduct is that his trial "counsel admitted on [the] record that he did not have all of the documents and evidence discovery that would have enable[d] him to prepare an adequate defense" and that he "had no opportunity to visit frequently with [Ramirez] to discuss the ramifications of trial or to develop a strategy."  (Doc. No. 99 at 7.)  Ramirez does not provide a citation to his counsel's alleged statement on the record, only a citation to a supposed exhibit that does not accompany his original habeas petition.  (*See id.* (citing "attached Ex. 1").)  Without more, these conclusory allegations that his trial counsel failed to adequately develop trial strategies or prepare an effective defense do not rise to the level of a cognizable Sixth Amendment violation for ineffective

assistance of counsel. *See, e.g.*, *United States v. Herrera*, 186 F. App'x 109, 111–12 (2d Cir. 2006) (denying ineffective assistance claims that were "entirely conclusory"); *United States v. Peterson*, 896 F. Supp. 2d 305, 316 (S.D.N.Y. 2012) ("To successfully assert an ineffective assistance of counsel claim based on a failure to investigate, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation.") (citation and quotation marks omitted). Indeed, Ramirez appears to recognize as much in his first amended petition when he refers to "the vague and conclusory nature of the allegations contained in" his original petition. (Doc. No. 102 at 1.) Unlike the other claims from his original petition, which Ramirez either elaborates upon in his first amended petition or expressly incorporates by reference in a footnote at the end of the amended petition (*see id.* at 15 n.*), Ramirez does not attempt to elaborate on this final claim of ineffective assistance, which appears only in his original petition (*see* Doc. No. 99 at 7).

### i.    Ineffective Assistance of Appellate Counsel

Ramirez also claims that his appellate counsel was ineffective for failing to raise arguments on appeal related to (1) the duplicity of Ramirez's indictment, (2) the Court's jury instructions as to section 924(c) and aiding-and-abetting liability, and (3) the sufficiency of the evidence with respect to aiding-and-abetting liability. (Doc. No. 102 at 14–15.) *Strickland* supplies the standard for establishing ineffective assistance of trial counsel and appellate counsel. *See Frederick v. Warden*, 308 F.3d 192, 197 (2d Cir. 2002). Accordingly, appellate counsel "does not have a duty to advance every nonfrivolous argument that could be made," *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), and the Sixth Amendment certainly does not require appellate counsel to raise non-meritorious arguments on appeal, *see, e.g.*, *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) (denying an ineffective assistance of counsel claim in part because the motions not pursued by counsel were without merit). As discussed above, there is no merit to Ramirez's claims that

his indictment was duplicitous, that the Court erred in instructing the jury, or that there was insufficient evidence to convict him of the section 924(c) count as charged.  And even if it could be argued that Ramirez's appellate counsel should have raised one or more of those arguments on appeal, Ramirez was not prejudiced in light of the jury's special interrogatory finding and the ample evidence of his liability under section 924(c) as a principal.  As a result, Ramirez has failed to satisfy either prong of *Strickland*.

### 2.     **Vellon PSR *Brady/Giglio* Claim**

In addition to asserting that his counsel provided ineffective assistance, Ramirez argues in his original petition that the government "withheld evidence from the defense that was vital to [his] case" – namely, certain portions of Alfonso Vellon's PSR.  (Doc. No. 99 at 9.)  But this allegation that the government violated its obligations to disclose exculpatory evidence merely restates the arguments raised in Ramirez's post-trial motions and on appeal.  (*See* Doc. No. 67 at 9–17); *Ramirez*, 628 F. App'x at 16–18.  "It is well-settled that a petition for habeas corpus may not provide a second bite at the apple, i.e., another chance to raise issues that were or could have been raised on appeal." *Gotti v. United States*, 622 F. Supp. 2d 87, 92 (S.D.N.Y. 2009) (italics omitted); *see also United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997); *Giacalone v. United States*, 739 F.2d 40, 42 (2d Cir. 1984).  Because the Second Circuit previously affirmed this Court's decision rejecting Ramirez's *Brady* arguments concerning the Vellon PSR, he may not relitigate the issue in a petition for habeas corpus.

### 3.     ***Johnson* Claim**

Ramirez's final claim is that his conviction under 18 U.S.C. § 924(c)(1)(A) must be vacated in light of the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015).  While *Johnson* and its progeny have invalidated many convictions under section 924(c), convictions

premised on "drug trafficking crime[s]," 18 U.S.C. § 924(c)(2), such as Ramirez's, are not among them.

In *Johnson*, the Supreme Court held that the so-called "residual clause" in the definition of a "violent felony" in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(2)(B), is unconstitutionally vague. *See* 576 U.S. at 597–602. That residual clause defined a "violent felony" to include any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 594 (quoting 18 U.S.C. § 924(e)(2)(B)) (emphasis omitted). Four years later, in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court extended the holding of *Johnson* – and the holding of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which was itself a product of *Johnson* – to invalidate the residual clause in the definition of a "crime of violence" in 18 U.S.C. § 924(c). *See Davis*, 139 S. Ct. at 2336. Similar to the residual clause struck down in *Johnson*, the residual clause in section 924(c) defines a "crime of violence" as "an offense that is a felony" and "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* at 2324 (quoting 18 U.S.C. § 924(c)(3)).

*Davis*, however, did not invalidate all of 18 U.S.C. § 924(c); it simply excised the portion of that statute – section 924(c)(3)(B), which set forth one of two definitions for a "crime of violence" – that the Supreme Court held "provide[d] no reliable way to determine which offenses qualify as crimes of violence and thus [was] unconstitutionally vague." *Id.* Indeed, *Davis* left intact half of section 924(c)'s definition of a "crime of violence," such that section 924(c) convictions predicated on a crime qualifying as a crime of violence under the "use-of-force" clause of section 924(c)(3)(A) are still valid. *See, e.g.*, *United States v. Barrett*, 937 F.3d 126, 128 (2d Cir. 2019) (explaining that convictions premised on crimes qualifying as crimes of violence under section 924(c)(3)(A) are unaffected by *Davis*).

Similarly, *Davis* did nothing to disturb section 924(c) convictions premised not on a "crime of violence," but instead on a "drug trafficking crime."  18 U.S.C. § 924(c)(2).  Unlike the residual clause under section 924(c)(3)(A), there is nothing unconstitutionally vague about the definition of a "drug trafficking crime" under section 924(c)(2).  That provision defines "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. 951 *et seq.*), or chapter 705 of title 46." *Id.*  There is no guesswork involved in identifying such crimes, nor any ambiguity in their definitions, that might deprive a defendant of fair notice of criminality; the relevant subset of crimes is expressly delineated by reference to specific federal controlled substances offenses.  *See, e.g.*, *United States v. Tyrell*, 840 F. App'x 617, 624 (2d Cir. 2021) (holding that the defendant's section 924(c) conviction premised on "narcotics conspiracy" and "narcotics distribution convictions" under 21 U.S.C. §§ 846 and 860 was "unaffected by *Davis*").

Here, Ramirez was charged and convicted under 18 U.S.C. § 924(c)(1)(A) for using and carrying a firearm during and in relation to (and possessing a firearm in furtherance of) "a drug trafficking crime" – specifically, conspiring to distribute 280 grams or more of crack cocaine in violation of 21 U.S.C. § 846.  (Doc. No. 15 ¶¶ 2–4; PSR ¶¶ 2–3.)  Because the narcotics conspiracy count carried a mandatory minimum penalty of 20 years[6] (*see* PSR ¶ 77); 21 U.S.C. § 841(a), (b)(1)(A)(ii), it plainly qualifies as a "felony punishable under the Controlled Substances Act," 18 U.S.C. § 924(c)(2).  As such, there can be no question that the narcotics distribution conspiracy

---

[6] Under the First Step Act of 2018, this enhanced penalty – which was a product of the government's filing of a prior felony information pursuant to 21 U.S.C. § 851 – was reduced from a mandatory minimum term of twenty years to a mandatory minimum of fifteen years.  *See* First Step Act, § 401(a)(2)(A)(i), 132 Stat. at 5220.  This modification, however, does not apply retroactively to defendants like Ramirez who already had their "sentence . . . imposed as of [the] date of enactment" of the First Step Act.  *See id.* § 401(c), 132 Stat. at 5221.

for which Ramirez was convicted remains a valid predicate for a section 924(c) charge, even after *Johnson* and *Davis*.  *See Tyrell*, 840 F. App'x at 624.

**B.    Ramirez's Motion to File a Second Supplemental Habeas Petition**

Beyond his original habeas petition (as amended by his first supplemental petition), Ramirez also seeks leave to file a second supplemental petition adding one additional claim for relief.  (Doc. No. 107.)  Specifically, Ramirez argues that he should be permitted to amend his petition to include the claim that he is entitled to resentencing in light of the Second Circuit's decision in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018).  (Doc. No. 107 at 7–8.)  The government opposes Ramirez's motion to amend his petition, arguing that *Townsend* does not support the relief that Ramirez seeks and that, in any event, Ramirez's motion is untimely.  (16-cv-5980, Doc. No. 16.)  The Court need not address the timeliness of Ramirez's motion because his new claim premised on *Townsend* lacks merit, and any amendment would be futile.  *See Thristino v. United States*, 379 F. Supp. 2d 510, 514 (S.D.N.Y. 2005) (explaining that a district court may defer considering the timeliness of a motion to amend until it "determines that leave to amend is appropriate").

A motion to amend a prior petition for habeas corpus brought pursuant to 28 U.S.C. § 2255 is analyzed according to the requirements of Rule 15(a) of the Federal Rules of Civil Procedure.  *See Ching v. United States*, 298 F.3d 174, 180 (2d Cir. 2002).  Under Rule 15(a), courts are instructed to "freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nonetheless, "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  Accordingly, "a district court may properly deny leave [to amend a habeas petition brought under section 2255] when amendment would be futile."  *Thristino*, 379 F. Supp. 2d at 514 (quoting *Jones v. N.Y. State Div. Military & Naval Affs.*, 166 F.3d 45, 50 (2d Cir. 1999)).  A proposed

amendment to a section 2255 petition "is futile 'if it fails to state a claim on which relief can be granted.'" *Murphy v. United States*, Nos. 10-cr-107 (RJS), 13-cv-8155 (RJS), 2016 WL 6601554, at *7 (S.D.N.Y. Nov. 4, 2016) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012)).

Ramirez asserts that *Townsend* compels resentencing on his Count One conviction (for participating in a conspiracy to distribute narcotics) because he believes that the base offense level for his sentence was enhanced by two prior state convictions based on New York State's definition of controlled substances. (Doc. No. 107 at 7–8.) *Townsend* held that "controlled substances," as denoted in section 4B1.2 of the United States Sentencing Guidelines (the "Guidelines"), are limited to those banned by federal law. 897 F.3d at 68, 71, 75. Ramirez therefore claims his base offense level, and hence his mandatory minimum sentence, were impermissibly affected by his state drug convictions. (Doc. No. 107 at 7–8.)

Ramirez misapprehends the *Townsend* decision and the nature of his sentence. *Townsend* addressed enhancements to a federal defendant's base offense level under section 4B1.2(b) of the Guidelines and subsections that rely on section 4B1.2(b). *See* 897 F.3d at 72. Specifically, the Second Circuit held that a "'controlled substance' under [section] 4B1.2(b) [of the Guidelines] must refer exclusively to those drugs listed under federal law." *Id.* at 71. In that case, the Second Circuit vacated the appellant's sentence under Guidelines section 2K2.1(a) because it was enhanced by prior state drug convictions based on a broader definition of "controlled substance" than the one employed by federal law. *See id.* at 74. Here, however, Ramirez was sentenced under Guidelines section 2D1.1(c)(3) (*see* Doc. No. 64 at 17), which does not rely on section 4B1.2(b) and determines the base level for an offense solely based on controlled substances listed in the Guidelines, *see* U.S.S.G. § 2D1.1. Because Ramirez's prior state drug convictions in no way contributed to his base offense level calculations, his sentence remains unaffected by *Townsend*.

Ramirez's misapprehension appears to stem from the fact that the Court considered his prior state drug offenses when calculating his criminal history under sections 4A1.1 and 4A1.2. (*See* Doc. No. 107 at 3.)  His criminal history calculation, however, was based on prior "sentences of imprisonment," which neither involved a state definition of a controlled substance nor affected his base offense level calculations.  *See* U.S.S.G. §§ 4A1.1, 4A1.2.  Furthermore, section 4A1.2 states that "sentences of imprisonment" include "[s]entences for all felony offenses," defining felony offenses to include "any federal, state, or local offense punishable by death or a term of imprisonment exceeding one year."  U.S.S.G. § 4A1.2.  As the Guidelines clearly provide that "sentences of imprisonment" include those arising from state felonies, the *Townsend* decision is inapplicable to calculations of criminal history under sections 4A1.1 and 4A1.2.  *See Townsend*, 897 F.3d at 69.  Thus, because *Townsend* does not impact the validity of Ramirez's sentence, the Court denies as futile his motion to amend his petition in light of *Townsend*.

## C.     Ramirez's Motion for a Sentence Reduction Under the First Step Act

In a pro se letter mailed directly to the Court, dated January 14, 2020, Ramirez also seeks a sentence reduction pursuant to the First Step Act of 2018.  (Ramirez Mot. at 3–7.)  Ramirez claims that section 404(b) of the First Step Act entitles him to a resentencing under the terms of the Fair Sentencing Act of 2010 because he was convicted of a "[c]overed offense[]," as defined by section 404(a).  (*Id.* at 4.)  While Ramirez is correct that he was convicted of a "covered offense," he is mistaken that the First Step Act entitles him to a sentence reduction for the simple reason that the Court already sentenced Ramirez in accordance with the Fair Sentencing Act.

In the Fair Sentencing Act of 2010, Congress attempted to "address what had been a 100-to-1 disparity between the amounts of crack and powder cocaine required to trigger the mandatory minimum penalties in 21 U.S.C. § 841(b)(1)" by "increas[ing] the threshold quantities of crack cocaine required to trigger each of Section 841(b)(1)'s mandatory statutory penalty ranges."

*United States v. Johnson*, 961 F.3d 181, 184 (2d Cir. 2020).  As relevant here, the Fair Sentencing Act increased the minimum amount of cocaine needed to trigger a twenty-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(iii) from fifty grams to 280 grams.  *See id.* at 184–85 (citing Fair Sentencing Act of 2010, § 2(a)(1), Pub. L. No. 111-220, 124 Stat. 2372, 2372).  Importantly, Ramirez's indictment, which was returned in 2013, charged him under the enhanced thresholds of the Fair Sentencing Act.  (*See* Doc. No. 15 at 1 (citing the 280-gram threshold).)  The jury likewise made specific findings concerning the higher thresholds enacted under the Fair Sentencing Act.  (Tr. at 708:21–24.)  In other words, the Court already sentenced Ramirez under the Fair Sentencing Act, which was in effect and applied fully to Ramirez at the time of his indictment, trial, and sentencing.  This distinguishes Ramirez from the defendants in the cases he cites in his motion, each of whom was sentenced in accordance with the crack cocaine ranges in effect *before* the Fair Sentencing Act was enacted.  *See, e.g.*, *United States v. Rose*, 379 F. Supp. 3d 223, 226 (S.D.N.Y. 2019).

Because Ramirez already received the benefit of the Fair Sentencing Act, he is not entitled to a sentence reduction under section 404(b) of the First Step Act.  The Court therefore denies Ramirez's motion.

* * *

Although none of Ramirez's arguments is ultimately persuasive, the Court is compelled to acknowledge the positive strides that Ramirez has made while incarcerated.  In his letter, Ramirez writes that he continues to maintain strong ties to his child and his community and family in the Bronx.  (Ramirez Mot. at 5.)  He also explains that he has "sought to improve himself as an individual," including by obtaining his GED; by obtaining certificates in U.S. history, mentoring, origami, and nutrition; and by counseling other inmates in the general population.  (*Id.* at 5–6.)

These are admirable achievements, and the Court hopes that Ramirez will continue with these endeavors during his term of incarceration.

### III. CONCLUSION

For the reasons set forth above, Ramirez's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.  Accordingly, all of Ramirez's claims are dismissed.  His second motion to amend his petition and his motion for a sentence reduction pursuant to section 404(b) of the First Step Act are also DENIED.  Because Ramirez has not "made a substantial showing of the denial of a constitutional right," the Court will not issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); *see also Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).  Furthermore, because any appeal would "lack[] an arguable basis in law or fact," *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995), the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that such an appeal would not be taken in good faith and, therefore, Ramirez may not proceed in forma pauperis with respect to any appeal, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to (1) terminate the motions pending at Doc. Nos. 99 and 107 of Case No. 13-cr-135 (RJS) and Doc. Nos. 1 and 14 of Case No. 16-cv-5980 (RJS), (2) close Case No. 16-cv-5980 (RJS), and (3) mail a copy of this Opinion and Order to Ramirez.

SO ORDERED.

Dated:      July 11, 2022
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------

UNITED STATES OF AMERICA,

vs.                                    13-CR-135 (RJS)

                                       Motion to Reduce Sentence
CHRISTOPHER RAMIREZ,                   Pursuant to 18 U.S.C.
                                       §3582(c).
            Defendant.          X
------------------------------


__MOTION FOR IMPOSITION OF A REDUCED SENTENCE PURSUANT__
__TO SECTION 404 OF THE FIRST STEP ACT, 18 U.S.C. §3582(c)(1)__

     Petitioner, Christopher Ramirez, pro se, hereby moves

this Honorable Court to reduce his sentence pursuant to

18 U.S.C. §3582(c) and the First Step Act ("FSA") of 2018.

In support thereof, Petitioner submits the attached

Memorandum of Law.

DATED: JANUARY 17, 2020.

                                   _____
                                   CHRISTOPHER RAMIREZ
                                   Reg. No. 62463-054
                                   USP-Canaan
                                   P.O. Box 300
                                   Waymart, PA 18472

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———

CHRISTOPHER RAMIREZ,

    Defendant-Petitioner,

                       Dkt. No. 13-CR-135 (RJS)

   vs.

UNITED STATES OF AMERICA.
                 X
_ _ _ _ _ _ _ _ _ _ _ _ _ _


MEMORANDUM OF LAW IN SUPPORT OF CHRISTOPHER RAMIREZ'S
MOTION FOR RE-SENTENCING PURSUANT TO SECTION 404 OF THE
FIRST STEP ACT OF 2018 AND 18 U.S.C. §3582(c)


                              Christopher Ramirez
                              Reg. No. 62463-054
                              United States Penitentiary
                              USP-Canaan
                              Post Office Box 300
                              Waymart, PA 18472
                              Pro Se.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................. 1

BACKGROUND ........................................... 2

ARGUMENT ............................................. 3

    A. The Court Has Jurisdiction to Grant a Sentence
       Reduction Under Section 404 of the First Step
       Act of 2018 .................................... 3

    B. Analysis ...................................... 4

       1. Ramirez Is Eligible for a Reduction .......... 4

    C. The Relevant Factors Weigh Strongly in Favor of
       a Sentence Reduction .......................... 4

       1. The Relevant Factors Weigh in Favor of the
          Relief Requested ............................ 5

       2. Ramirez Is Not a Danger ...................... 6

CONCLUSION ........................................... 6

TABLE OF AUTHORITIES

CASES:

Dillion v. United States, 560 U.S. 817 (2010)............ 4

Dorsey v. United States, 567 U.S. 260 (2012) ............ 6

United States v. Boulding, 379 F.S. 3d 646
(W.D. Mich. 2019) ....................................... 6

United States v. Kaymore, No. 5:10-CR-16
(W.D. Va. 2019) ......................................... 4

United States v. Rose, 2019 WL 2314479, at *2
(S.D.N.Y. 2019) ......................................... 4


STATUTES:

18 U.S.C. §841(a)(1) .................................... 2

18 U.S.C. §846 .......................................... 2

18 U.S.C. §924(c) ....................................... 2

18 U.S.C. §3553(a) ...................................... 4, 5

18 U.S.C. §3582(c)(1) ................................... 5

Pub. L. 111-220, 124 Stat. 2372 ........................ 3

Pub. L. 115-391, 132 Stat. 5194; §404 .................. 1, 3

U.S.S.G. §2D1.1(c)(3) ................................... 3

## PRELIMINARY STATEMENT

Christopher Ramirez was sentenced on May 27, 2014 to a
30-year prison term based on his convictions for a narcotic
conspiracy and a related firearm charge. The drug conspiracy
conviction (Count One) netted Ramirez a 240-month term of
imprisonment, while the firearm conviction (Count Two),
netted a 120-month mandatory minimum term of imprisonment.
The judgment court also sentenced Mr. Ramirez to a term of
10 years of supervised release under Count One and 5-years
on Count Two, to run concurrently.

At the time of sentencing, referring to its discretion
in imposing sentence for Count One, the Honorable Richard J.
Sullivan, stated, "The first count carries a mandatory
minimum of 20 years. I have no control. I could not sentence
him below that even if I wished to..." Sent. Tr. at 16. The
Court went further: "Even if I desperately wanted to...
that's not within my power." T$_r$. at 16. Perhaps even more
significantly, the judge said, "The law requires a 20-year
sentence [on Count One]. Left to my own devices, maybe I
would have sentenced you to less than that..." Sent. Tr. at
25.

Thankfully, this Court can now bring a belated measure
of justice to Mr. Ramirez's sentence. Due to the changes
made to the overly harsh drug laws of the past by the First
Step Act, see P.L. 115-391, 132 Stat. 5194, §404 (December

1

21, 2018), this Court may reduce Ramirez's sentence, and he asks the Court to reduce his sentence to time served for the reasons set forth below. Alternatively, Mr. Ramirez asks that the Court reduce his sentence to 20-years of imprisonment.

### FACTUAL BACKGROUND

Sometime in early April of 2009, Mr. Ramirez was involved in a conspiracy to distribute, and possess with the intent to distribute, controlled substances. Ramirez was a low-level seller within this conspiracy. On February 27, 2013 a grand jury sitting in the Suothern District of New York returned a two-count superseding indictment, charging Mr. Ramirez with one count of conspiracy, in violation of 21 U.S.C. §841(a)(1) and §846 (Count One, and one count of use of a firearm during a drug-trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A)(iii)(Count Two).

Following a trial on both counts, a jury found Ramirez guilty of Count One and Two. The Court sentenced him to 240 months of incarceration on Count One, and 120 months of incarceration on Count Two, that sentence to be served consecutively to his sentence on Count One, for a total sentence of 360 months (30-years). Ramirez has served almost 10 years of that sentence.

During the sentencing hearing held on May 27, 2014, based

laregely in part on the amount of crack cocaine attributed
in the Presentence Report ("PSR") as relevant conduct, i.e.,
"2.6 kilograms", the Court determined that Ramirez's base
offense level was 34. U.S.S.G. §2D1.1(c)(3). Because the
Government filed notice of intent to enhanced pursuant to
§851 based on his prior state felony convictions, the court
noted that the mandatory sentence for Count One was "at
least 20 years' imprisonment."

ARGUMENT

A. <u>The Court Has Jurisdiction to Grant a Sentence
   Reduction Under the First Step Act of 2018.</u>

On December 21, 2018, the First Step Act became law.
See Pub. L. No. 115-391, 132 Stat. 5194 (2018). Among other
criminal justice reforms, the new law effectively extended
the Fair Sentencing Act's sentencing relief to those crack
cocaine offenders originally excluded from the 2010 law.
See Pub. L. No. 111-220, 124 Stat. 2372 (2010). Most rele-
vant here, Section 404 of the First Step Act makes retro-
active certain provisions of the Fair Sentencing Act of
2010, and empowers district courts to "impose a reduced
sentence" as if the Fair Sentencing Act had been in effect
at the time of the defendant's offense. Under the First
Step Act, the district court must first determine a
defendant's eligibility for relief and then decide whether
a reduced sentence is appropriate.

3

B. <u>Analysis</u>

1. <u>Ramirez Is Eligible for a Reduction</u>

Section 404 states that the provisions of the First
StepoAct apply to all "Covered offenses," defined as a
"violation of a Federal criminal statute, the statutory
penalties for which were modified by section 2 or 3 of the
Fair Sentencing Act of 2010... that was committed before
August 3, 2010."

Ramirez committed the instant offense of Conspiracy
to Distribute Crack Cocaine before August 3, 2010. Section
2 of the Fair Sentencing Act modified the statutory range
of penalty for that offense. Accordingly, Ramirez is
eligible for a sentencing reduction under the First Step
Act. Rose v. United States, 2019 WL 2314479 (S.D.N.Y.
2019); United States v. Kaymore, No. 5:10-cr-16 (W.D. Va.
2019).

C. <u>The Relevant Factors Weigh In Favor of a
Sentence Reduction</u>.

"In determining of modification is appropriate, the
Court must also address whether, first, a reduction is
consistent with the First Step Act, and second, "consider
whether the authorized reduction is warranted, either in
whole or in part, according to the facts set forth in
§3553(a)." Dillion v. United States, 560 U.S. 817, 826
(2010). The First Step Act makes clear that even if a

4

defendant is eligible for a sentence reduction, the court
has discretion to grant or deny the reduction. §§404(a),
404(b).

1. <u>The Relevant Factors Weigh In Favor of
   a Sentence Reduction</u>.

Ramirez's request for a sentence reduction is now
authorized under the rubic of the 18 U.S.C. §3553(a)
factors pursuant to 18 U.S.C. §3582(c)(2). As relevant
here, the factors include: (1) the nature and circum-
stances of the offense and the history and characteristics
of the defendant; (2) the need for the sentence imposed;
and (3) the need to avoid unwarranted sentencing dispari-
ties.

Mr. Ramirez has an extended family that has remained
supportive of him since his conviction. As noted by the
sentencing court, he has a child and continues to maintain
strong ties to the community and family in the Bronx. In
regards to post-rehabilitation efforts, Ramirez has sought
to improve himself as an individual and has undertaken
various routes to do so. Those efforts include obtaining
his GED and participating in institutional programs. He
has obtained certificates of achievements in US History,
Mentouring, Origami, Nutrition and Memory Life, and studies
in softball and basketball. Further, Mr. Ramirez is

5

currently awaiting enrollment in a culinary arts class that is offered at the prison. Finally, Ramirez takes time out to counsel other inmates in general population, providing life-changing, positive guidance to those around him.

### 2. Ramirez Is Not a Danger

Ramirez does not present a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g). Although he was convicted of serious offenses, he has steadfastly expressed remorse--during sentencing and even now-- to the victims involved in his case, and about the conduct that led to his conviction. The evidence of rehabilitation during the intervening 10-year period, the extensive and close ties that he maintains with his family and community in the Bronx area, and his remorse concerning his past crimes and determination to do better for himself, are all indicative that he presents no danger upon release.

### CONCLUSION

Mr. Ramirez is eligible under the First Step Act of 2018 for sentence reduction because his offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act of 2010. See e.g., United States v. Bould-

---

[1] The Supreme Court held in Dorsey v. United States, 567 U.S. 260, 281 (2012) that the Fair Sentencing Act's reductions apply to the sentence of any defendant sentenced after the Act's August 3, 2010 implementa-

ing, 379 F.Supp. 3d 646, 657 (W.D. Mich. 2019). Further, for the reasons explained above, Mr. Ramirez meets the criteria for a reduction under the §3553(a) factors. Wherefore, he respectfully prays that the Court grant his motion for sentence reduction.

Dated: Janurary 14ᵀʰ, 2020.          /s/ Christopher Ramirez

                                      CHRISTOPHER RAMIREZ
                                      Reg No.62463-054
                                      USP-Canaan
                                      P.O. Box 300
                                      Waymart, PA 18472

---

tions, regardless of when the offense conduct took place.

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2020, I caused a true and correct copy of the foregoing Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582(c) with supporting Memorandum of Law, to be served via U.S. Mail upon counsel below:

ROBERT LEE BOONE
U.S. Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

s. *Christopher Ramirez*
CHRISTOPHER RAMIREZ